# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DEBORAH PAFFORD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:07CV00039 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Vernon M. Williams, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Thomas C. Buchanan, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Deborah Pafford filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383(f) (West 2003 and Supp. 2008). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff filed her current applications for DIB and SSI on September 5, 2003, alleging disability beginning March 15, 2001, due to back pain, diabetes mellitus, carpal tunnel syndrome, depression and anxiety.[1] (R. at 58-61, 98, 345.) These claims were denied initially on April 2, 2004 (R. at 44-46), and upon reconsideration on June 17, 2004 (R. at 51-53).

---

[1] The plaintiff filed previous applications for DIB and SSI on March 28, 2001 ("2001 claim"), and for DIB on March 22, 2002 ("2002 claim"). (R. at 15-16.) The 2001 claim was denied at every stage of the administrative process and on appeal by this court, *Pafford v. Barnhart*, No. 2:02CV00186, 2004 U.S. Dist. LEXIS 28604, at *1 (W.D. Va. Mar. 19, 2004) (Jones, J.), and the court of appeals, *Pafford v. Barnhart*, 122 F. App'x 35, 35 (4th Cir. 2005). The 2002 claim was also denied throughout the administrative process and on appeal by this court, *Pafford v. Barnhart*, No. 1:04CV00138, 2005 U.S. Dist. LEXIS 18714, at *1 (W.D. Va. Aug. 30, 2005) (Sargent, J.). All of the applications filed by the plaintiff, including the current application for DIB and SSI, allege disability beginning March 15, 2001. Accordingly, this court need only consider the period following the ALJ's denial of benefits on the 2002 claim) onwards.

The plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on March 17, 2005. (R. at 54, 341-59.) The plaintiff, who was present and represented by counsel, testified at the hearing. By decision dated May 3, 2005, the ALJ denied the plaintiff's claim. (R. at 12-23.)

The plaintiff then requested a review by the Social Security Administration's Appeals Council (R. at 11), for which she submitted additional medical evidence (R. at 8), but by notice dated June 8, 2007, the Appeals Council denied the plaintiff's request for review (R. at 5-7). Thus, the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was thirty-four years old at the time of the ALJ's decision, making her a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 416.963(c) (2007). She has a high school education and her past work experience includes working as a convenience store cashier or stocker and as a restaurant worker. (R. at 66, 102, 346-47, 355.)

The plaintiff has a long history of health problems, including being diagnosed with diabetes in her teens and degenerative disc and joint disease. On January 3, 2003, she sought the care of her family physician, Robert W. Walker, M.D., to manage her diabetes. (R. at 157, 274.)

The plaintiff saw pain specialist John W. Whiteley, M.D., for treatment of her lower back and leg pain and degenerative disc and joint disease between February 11, 2003, and July 21, 2003. (R. at 178-82.) On the initial visit, the plaintiff described a history of stabbing back pain, right leg pain, left leg numbness, carpal tunnel syndrome and numbness in her hands, and depression and sleep problems due to the pain. (R. at 181.) She stated that the pain was stable and controlled by her current medications. (*Id.*) Dr. Whiteley observed that the plaintiff's lower back and leg pain was secondary to fibromyalgia, recommended physical therapy and home exercise, and prescribed medications for her pain, depression, and sleeping problems. (R. at 182.) He also contacted Dr. Walker to inform him of impressions and treatment plan and to ask him not to prescribe any additional narcotics to the plaintiff. (R. at 180.)

By June 2, 2003, the plaintiff reported that she had less pain and found that she could be more active and Dr. Whiteley's opined that the plaintiff's myofascial pain was reasonably controlled by the treatment. (R. at 142.) However, on July 21, 2003, the plaintiff reported that her pain was no longer under control and that she was

having difficulty with activities of daily living. (R. at 178.) Dr. Whiteley increased her medication and planned to follow up in three months. (*Id.*) The plaintiff asked Dr. Whiteley to complete a Medical Assessment of Ability to Do Work-Related Activities, but this assessment was not entered into evidence. She told Dr. Walker that "the way [Dr. Whiteley] filled out the form was not adequate" and that the form required completion by a primary care physician rather than a specialist. (R. at 141.) The plaintiff never returned to see Dr. Whiteley. (R. at 131.)

The plaintiff also sought treatment from specialists Douglas P. Williams, M.D., and Timothy G. McGarry, M.D., for treatment of her carpal tunnel syndrome.[2] On August 13, 2003, Dr. Williams performed an ultrasound examination that suggested compression of the plaintiff's median nerves at her wrists. (R. at 183.) Electrodiagnostic studies performed by Dr. Williams indicated moderate carpal tunnel syndrome in both wrists, with worse symptoms in the right wrist. (R. at 188.) On October 8, 2003, the plaintiff was seen by Dr. McGarry's physician's assistant. (R. at 203.) The plaintiff reported pain, tingling and numbness in her wrists and fingers, worse on her left side. (*Id.*) The physician's assistant noted that the plaintiff had good motion in both hands, mildly decreased grip strength in her right wrist as

---

[2] The plaintiff also saw Dr. Williams on March 12, 2003, for treatment of migraine headaches. (R. at 184.) Dr. Williams increased one of her prescription medications to combat this problem and sent a letter to Dr. Walker describing the visit. (*Id.*)

compared to her left, no instability in either wrist, and a full range of motion in the elbows. (*Id.*) Following this examination, the plaintiff discussed treatment options with Dr. McGarry and decided to proceed with carpal tunnel release on the left wrist which was bothering her more at that time (R. at 202); this surgery was performed on October 27, 2003 (R. at 205-06). On November 12, 2003, Dr. McGarry reported that the plaintiff was doing extremely well and reported less discomfort in her left hand. (R. at 200.) He noted that she was still experiencing some problems with her right hand but wanted to wait to see how her left hand responded to the surgery. (*Id.*) He stated that the plaintiff could resume increased activity. (*Id.*)

The plaintiff was briefly hospitalized in August 2004 at Southwest Virginia Mental Health Institute after she took an overdose of Zanaflex following an argument with her boyfriend because she was being evicted from her apartment. (R. at 274.) A urine drug screen was positive for cocaine and benzodiazepine. (R. at 275.) She was diagnosed with adjustment reaction with depression and followup care was recommended. (R. at 276.) She began individual therapy and reported that she was less depressed. (R. at 250.)

On August 27, 2004, she returned to Dr. Walker and a neurologic examination was normal. (R. at 255.) On February 17, 2005, Dr. Walker completed another Medical Assessment of Ability to Do Work-Related Activities form, in which he

- 6 -

Case 2:07-cv-00039-JPJ-PMS    Document 17    Filed 02/17/09    Page 6 of 10    Pageid#: 72

opined that the plaintiff could not work, based on her complaints of pain. (R. at (R. at 291-92.)

Based upon the evidence, the ALJ determined that the plaintiff retains the capacity to perform light work, as defined in the regulations, with several additional restrictions. The plaintiff can only climb, balance, stoop, kneel, crouch, or crawl on an occasional basis. Further, the plaintiff is limited in her ability to push or pull with her upper extremities. (R. at 21.) Based upon testimony of a vocational expert, the ALJ found that the plaintiff could return to her past relevant work or perform numerous other jobs in the national economy. (*Id.*) Thus, he found that the plaintiff was not disabled. (*Id.*)

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423 (d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing SSI claims. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2008). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The fourth and fifth steps in this inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2008).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). "It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff challenges the ALJ's assessment of her residual functional capacity and the ALJ's determination that this residual functional capacity does not preclude her from returning to her past relevant work or performing other work in the national economy. The plaintiff's primary argument is that the ALJ's determination of her residual functional capacity was not supported by substantial evidence because he did not give proper weight to the medical opinions of the plaintiff's treating physician, did not properly evaluate the severity of the her mental impairments, and did not consider the impact of her obesity.

IV

Based on my careful consideration of the record, I find that the plaintiff's arguments are without merit. The ALJ did properly consider the opinions of Dr.

Walker, the plaintiff's treating physician, although he did not credit them, based on his findings that they were inconsistent with the other medical evidence.

The ALJ also did not err in his evaluation of the plaintiff's mental impairments in his finding that her anxiety and depression were not severe. The ALJ credited the opinions of the state reviewing physicians, which findings were within his range of discretion. Finally, contrary to counsel's assertion, the ALJ did note in his opinion that the plaintiff was overweight and that it contributed to surface pain on her thigh. (R. at 18.) However, that condition was not claimed or shown to contribute to any disability.

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 17, 2009

/s/ JAMES P. JONES
Chief United States District Judge